IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-CV-0637-RBJ-MJW

MICHAEL A. ABRAHAM,

    Plaintiff,

v.

NORBERT E. SIMPSON and DARLENE A. SIMPSON,

    Defendants.

## ORDER

This case is before the Court on defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted [docket #7].

**Facts**

Plaintiff, Michael Abraham, alleges that on January 11, 2011 the Simpsons initiated arbitration against him by filing a Statement of Claim with the Financial Regulatory Authority ("FINRA"). In the Statement of Claim, attached to the Complaint as Exhibit A, the Simpsons allege that on October 8, 2007 they purchased two units of the MKA Real Estate Qualified Fund I, LLC (hereafter "the Fund") at a cost of $400,000 through the services of a registered broker/dealer by the name of Robert Jerome Overgaard. They allege that Overgaard induced them to make the purchase with a number of false representations including that the investment was "safe and secure," that the Fund had never suffered a loss, that no asset of the Fund was in default, that "preferred" payments of 12% per annum were guaranteed, and that the Fund had never missed a payment. The reality, they allege, was that the Fund had suffered substantial

1

losses, had numerous assets in default, had deteriorated into a Ponzi scheme, and was on the verge of collapse. Contrary to representations that the Simpsons would receive monthly distributions of 1% ($4,000) of their investment, they allege that they received such payments in November and December 2007 and nothing since.

In their Statement of Claim the Simpsons further allege that MKA Capital Group Advisors, LLC was the Manager of the Fund. They allege that Michael A. Abraham was a 50% member, manager and chief executive officer of the Manager; that he oversaw the day to day operations of the Fund; that he was a registered broker/dealer; that he controlled Overgaard and Overgaard's employer; and that he made the false representations to Overgaard, who passed them along to the Simpsons. The Simpsons asserts claims against Mr. Abraham of (1) violation of the Colorado Securities Act, (2) common law fraud, and (3) breach of fiduciary duty. An arbitration before a FINRA panel is scheduled to begin on November 29, 2011.

Mr. Abraham attaches to his Complaint as Exhibit B a document entitled "MKA Real Estate Qualified Fund I, LLC -- Third Amended and Restated Operating Agreement" (hereafter "the Agreement"). This purports to be an agreement between the Manager and each person who has executed a counterpart of the Agreement as a "member" of the Fund. It provides, in paragraph 14.13, that any dispute arising out of or relating to the Agreement will be submitted to arbitration conducted by J.A.M.S. in Orange County, California. The last page of Exhibit B is a "consent form" that contains signatures that are alleged to be those of the Simpsons and a date stamp "rec'd Mar 06 2008."

Abraham seeks declarations from this Court (1) that he has not agreed to a FINRA arbitration, and therefore, that a FINRA panel cannot issue a binding award against him, and (2) that the arbitration provision of the Agreement is binding on the Simpsons.

In their motion to dismiss the Simpsons argue that (1) Abraham agreed to FINRA arbitration, (2) he is bound by FINRA's customer arbitration code, (3) the FINRA arbitration panel must decide whether the Agreement constitutes a waiver of FINRA arbitration, and (4) the code prohibits Abraham from filing this action.

**Conclusions**

In deciding a Rule 12(b)(6) motion, the Court must accept the well-pleaded, non-conclusory factual allegations as true and views them in the light most favorable to the plaintiff. *See, e.g., PayoutOne v. Coral Mortg. Bankers,* 602 F. Supp. 2d 1219, 1222 (D. Colo. 2009). If the allegations so construed do not state a claim on which relief could be granted as a matter of law, then and only then will the motion be granted.

The motion and briefs raise three basic issues, discussed in turn below.

**Who Determines Whether the Disputes Are Subject to Arbitration?**

The Simpsons argue that the FINRA arbitration panel and not the Court has jurisdiction to determine whether their claims are subject to FINRA arbitration. The applicable law is not complex. If parties clearly and unmistakably agree to have an arbitrator determine whether a claim is arbitrable, then the arbitrator decides the issue in the first instance; and the court must give considerable deference to the arbitrator's decision. However, if there is no such agreement, then the court decides the issue. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-45 (1995). Procedural questions such as whether questions precedent to arbitrability have been fulfilled (e.g., time limits, notice, laches, estoppel, waiver) are for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84-85 (2002).

The Simpsons contend that Mr. Abraham was a broker/dealer registered with FINRA at the time he made the representations of which they complain, and that FINRA membership

creates a "written agreement" to arbitrate. This argument begs the question of whether there is a clear and unmistakable agreement that the arbitrator would decide the issue of arbitrability. Because there is nothing within the four corners of the Complaint that addresses that issue, it cannot be resolved on a Rule 12(b)(6) motion.

**Did Mr. Abraham agree to FINRA arbitration?**

If one assumes hypothetically the arbitrability is for the Court to decide, *see, e.g., Smith v. Currency Trading Intern., Inc.,* 10 F. Supp. 2d 1189, 1190-91 (D. Colo. 1998), *aff'd* 188 F. 3d 519 (10th Cir. 1999), the question then is whether the plaintiff agreed to FINRA arbitration. The Simpsons cite the FINRA Code of Arbitration Procedure for Customer Disputes, attached as Appendix A to their motion to dismiss. The Code provides as follows:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or
    (2) Requested by the customer.

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving he insurance business activities of a member that is also an insurance company.

Code §12200.

A "member" is "any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled." Code §12100(o). An "associated person of a member" is a "person associated with a member." Code §12100(a). A "person associated with a member" is

(1) A natural person who is registered or has applied for registration under the Rules of FINRA; or

> (2) A sole proprietor, partner, officer, director, or branch manager or a member or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.
>
> For purposes of the Code, a person formerly associated with a member is a person associated with a member.

Code §12100(r).

The term "customer" is not defined other than to say that it does not include a broker or dealer. Code §12100(i). The term "dispute" means a "dispute, claim or controversy." Code §12100(l).

In short, if a person is a "member" or a "person associated with a member," the Code requires that he submit disputes with customers arising in connection with his business activities to FINRA arbitration.

In his Complaint Mr. Abraham alleges that he has not agreed to arbitrate the dispute with the Simpsons in the forum provided by FINRA. He admits that he "formerly" was a person associated with a FINRA member without specifying when he had that status. He alleges that the Simpsons were not his customers. Complaint ¶8. The Court must accept those allegations as true for purposes of the motion to dismiss.

In their Statement of Claim the Simpsons allege that at the time of their investment Mr. Abraham was a broker/dealer; that he oversaw the operations of the Fund; that he was associated with and controlled Mr. Overgaard and his employer; and that he made the false representations to Overgaard and his employer that were used to induce the Simpsons to invest in the Fund. Mr. Abraham obviously does not subscribe to those allegations. The fact that the Statement of Claim has been filed seeking FINRA

5

arbitration is part and parcel of the Complaint.  However, the Simpsons' factual allegations in their Statement of Claim are extrinsic to his Complaint.  The Court cannot and does not assume their truth for the purpose of the pending motion.

Accordingly, whether Mr. Abraham agreed to FINRA arbitration cannot be decided in the context of resolving the pending Rule 12(b)(6) motion.

### Did the Simpsons Agree to J.A.M.S. Arbitration?

Even without knowing the circumstances under which the Simpsons purportedly consented to be bound by the Agreement, it is at most an agreement between them and the Manager of the Fund.  Mr. Abraham is not a party to the Agreement.  The Simpsons' Statement of Claim names Mr. Abraham, individually, as the sole respondent.  It is not a matter of a "waiver" of FINRA arbitration, which would be decided by the arbitrator.  The Court holds as a matter of law that the Agreement does not apply to the disputes raised by the Simpsons against Mr. Abraham individually.

### Order

The motion to dismiss is granted in part and denied in part.  The dispute will not be arbitrated by J.A.M.S. in Orange County, California.  Whether the dispute is subject to FINRA arbitration, and whether that issue will be decided in the first instance by the arbitrator or the Court, cannot be determined in the context of the pending motion.  These issues presumably will be addressed in the hearing on plaintiff's pending motion for a temporary restraining order and preliminary injunction seeking to prohibit the Simpsons from proceeding with FINRA arbitration.

DATED this 22nd day of November, 2011.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge