IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-CV-0637-RBJ-MJW

MICHAEL A. ABRAHAM,

    Plaintiff,

v.

NORBERT E. SIMPSON and DARLENE A. SIMPSON,

    Defendants.

---

## ORDER

---

    This case was heard this morning on plaintiff's motion for a temporary restraining order and preliminary injunction [docket #23]. Plaintiff seeks to restrain defendants from proceeding with an arbitration by a panel appointed under the auspices of the Financial Regulatory Authority ("FINRA"). The arbitration is scheduled to begin at 9:00 a.m. tomorrow, November 29, 2011. A continuance was previously denied by the panel. Following the hearing the Court took the issues under advisement in order to review authorities cited and relied upon by counsel.

**Facts**

    The Court set forth certain basic facts in an order on defendant's motion to dismiss issued November 22, 2011. Briefly, in his complaint in this case, Mr. Abraham requested a declaratory judgment that he not be required to arbitrate certain disputes with the Simpsons through FINRA arbitration in Colorado. Rather, he requested that the Court require the Simpsons to arbitrate the disputes with J.A.M.S. in Orange County, California. The Simpsons moved for dismissal for failure to state a claim upon which relief could be granted. The Court granted the motion to the

extent that it held that the Simpsons have no obligation to arbitrate with J.A.M.S. in California. However, the Court could not determine whether Mr. Abraham was required to arbitrate with FINRA in the context of the motion to dismiss. Therefore, because the FINRA arbitration was imminent, the Court set today's hearing on the injunction issues.

Mr. Abraham, the moving party, presented no witnesses at the hearing and no evidence other than brief cross-examination of Mr. Simpson and two exhibits. The Simpsons presented the testimony of Mr. Simpson and several exhibits. Based upon the evidence presented, the Court makes the following findings of fact.

On or about October 8, 2007 the Simpsons purchased two units of the MKA Real Estate Qualified Fund I, LLC (hereafter "the Fund") at a cost of $400,000 through the services of a stock broker by the name of Robert Jerome Overgaard and his brokerage firm, JRL Capital Corporation. Mr. Simpson had known Mr. Overgaard for at least 30 years and considered him to be "one of the most honest persons he ever met." In addition to being a stock broker with JRL Capital Corporation, Mr. Overgaard was an employee of MKA Capital Group Advisors, LLC. MKA Capital Group Advisors, LLC was the "Manager" of the Fund.

Mr. Abraham was a stock broker and, at the time of the Simpsons' investment, was registered with Westmoore Securities, Inc., a member of FINRA. Westmoore Securities was not involved in the Simpsons' investment. As indicated, the investment was made through JRL Capital Corporation with whom Mr. Overgaard was associated at the time. Mr. Abraham had been a stock broker with JRL Capital Corporation until about six months before the Simpsons' investment. His counsel states that Mr. Abraham was not a "broker" or "dealer" admitted to membership in FINRA. Although he presented no evidence to that effect, the Court accepts the representation for present purposes. However, counsel acknowledged that Mr. Abraham was a

person associated with a member, namely, Westmoore Securities, and that he previously had been a person associated with another member of FINRA, JRL Capital Corporation.

At the time of the Simpsons' investment in the Fund, Mr. Abraham was the Chief Executive Officer of MKA Capital Group Advisors, LLC.  In marketing the Fund to the Simpsons, Mr. Overgaard provided to them, among other documents, a MKA Capital Group brochure.  Ex. A.  This document touted Mr. Abraham's career in the financial industry spanning more than 40 years; his past association with Reynolds and Company (later Morgan Stanley Dean Witter),and his purchase of his own seat on the Pacific Stock Exchange where he traded equities.  *Ibid.*  Mr. Overgaard told the Simpsons that he worked for Mr. Abraham; that he had known Mr. Abraham for years; and that Mr. Abraham was very smart and a skilled broker and manager of the Fund.  Mr. Simpson never spoke directly with Mr. Abraham.  However, Mr. Overgaard told Mr. Simpson that he was in telephone communication with Mr. Abraham.  The Simpsons allege that Mr. Abraham exercised control over Mr. Overgaard in connection with Overgaard's marketing of investments in the Fund, including to the Simpsons.

On October 18, 2007, approximately 10 days after the Simpsons invested in the Fund, Mr. Abraham sent them a letter welcoming them as "a new investor to MKA Capital Group Advisors, LLC."  Exhibit C.  The letter concludes, "[i]f you have any questions regarding your investment, please feel free to contact me at 949-729-1660, ext. 101."

The Simpsons allege, in their Statement of Claim filed with FINRA (exhibit A to Mr. Abraham's complaint), that they were promised at least 12% annual returns including monthly distributions of 1% of their investment, i.e., $4,000 per month.  They allege that they received two monthly distributions in November and December 2007 and nothing since.  Mr. Simpson testified that they needed the monthly payments.  They assert claims against Mr. Abraham of (1)

violation of the Colorado Securities Act, (2) common law fraud, and (3) breach of fiduciary duty. An arbitration before a FINRA panel is scheduled to begin on November 29, 2011. Those allegations and claims go to the merits of the dispute, which are not before the Court. Rather, the only issue presently before the Court is whether the FINRA arbitration should be enjoined.

**Conclusions**

**I.      REQUIREMENTS FOR INJUNCTIVE RELIEF.**

A temporary restraining order may be issued ex parte if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss of damage will result to the movant before the adverse party can be heard in opposition," and counsel certifies to efforts to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). Here, plaintiff sought both a temporary restraining order and a preliminary injunction. Notice was provided to the Simpsons, and an evidentiary hearing was held. Accordingly, there is no cause to consider an ex parte temporary restraining order.

In order to obtain a preliminary injunction, the moving party must show that (1) there is a substantial likelihood of success on the merits; (2) he will suffer irreparable harm unless the preliminary injunction is issued; (3) the balance of the equities tips in the movant's favor; and (4) the injunction, if issued, will not adversely affect the public interest. *Attorney General of the State of Oklahoma v. Tyson Foods, Inc.,* 565 F.3d 769, 776 (10th Cir. 2009).

**Likelihood of Success on the Merits.**

At the outset, the Simpsons argue that whether their dispute with Mr. Abraham is subject to FINRA arbitration must be decided by the arbitrators, not by this Court. I disagree. As indicated in the Court's November 22, 2011 order, if parties clearly and unmistakably agree to have an arbitrator determine whether a claim is arbitrable, then the arbitrator decides the issue in

4

the first instance; and the court must give considerable deference to the arbitrator's decision. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-45 (1995). No evidence has been presented of a clear or unmistakable agreement that the arbitrators would determine whether the claim is arbitrable. Accordingly, the Court will make that determination.

The only evidence presented on Mr. Abraham's behalf was cross examination of Mr. Simpson, which elicited the admission that he had never spoken directly with Mr. Abraham; a document, exhibit 1, showing that MKA Capital Group Advisors, LLC accepted the Simpsons' investment in the Fund on October 9, 2007 (signed by its President, not by Mr. Abraham); and an excerpt said to be from a FINRA web site, current as of June 18, 2009, exhibit 2, which provided historical information about Mr. Abraham's association with Westmoore Securities and JRL Capital Corporation.[1] This evidence falls far short of demonstrating a substantial likelihood of success on the merits. On that basis alone, i.e., the failure of proof, the Court denies the motion for a preliminary injunction.

Moreover, the evidence presented by the Simpsons raises serious questions about Mr. Abraham's likelihood of success on the merits on his argument that he need not submit to FINRA arbitration.[2] The parties do not dispute that the question whether Mr. Abraham is obligated to submit to such arbitration requires application of the FINRA Code of Arbitration Procedure for Customer Disputes. Relevant portions of the Code were attached as Appendix A to the Simpsons' motion to dismiss. The Code provides as follows:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or
    (2) Requested by the customer.

---

[1] The Court does not recall formally admitting Exhibit 2 but does so now.
[2] Again, for emphasis, the Court notes that it is not commenting on the merits of the Simpsons' fraud claims, etc.

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Code §12200.

1. <u>Request for arbitration</u>.

The Simpsons requested FINRA arbitration. The term "customer" is not defined in the Code other than to say that it does not include a broker or dealer. Code §12100(i). However, as Mr. Abraham's counsel conceded during the hearing, the Simpsons were certainly customers of someone. At a minimum they were customers of JRL Capital Corporation. *See O.N. Equity Sales Co. v. Rahner,* 526 F.Supp. 2d 1195, 1200 (D. Colo. 2007)(quoting the 8th circuit for the proposition that to be a "customer," an individual must be "involved in a business relationship with a NASD member that is related directly to investment or brokerage services"). As a matter of common sense and the plain and ordinary meaning of words not otherwise defined, the Simpsons were customers of Mr. Overgaard.

According to Mr. Abraham's letter, of October 18, 2007, he welcomed them as new investors to MKA Capital Advisors, LLC. He was the CEO of that entity. He invited them to call him personally if they had questions regarding their investment. Ex. C. Mr. Overgaard told Simpsons that he was in telephone communication with Mr. Abraham and touted his experience and acumen in the financial industry as part of his sales pitch. He employed Mr. Overgaard at MKA Capital Advisors, LLC, and allegedly exercised control over Mr. Overgaard, his employee, in the marketing of investments in

the Fund. The term "customer" in the Code should be broadly defined. *See, e.g., Herbert J. Sims & Co., Inc.,* 548 F.Supp.2d 759, 763-64(N.D. Cal. 2008). In the circumstances, the Court finds that the Simpsons were customers of Mr. Abraham as well as of Mr. Overgaard and JRL Capital Corporation.

 2. <u>Dispute between a customer and a member or associated person of a member.</u>

A "member" is "any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled." Code §12100(o). Counsel for Mr. Abraham asserts that he was not a "member." Although no evidence was presented to substantiate this assertion, I will accept it for present purposes. However, it is undisputed that JRL Capital Corporation is, or at least was when the investment was made, a "member."

An "associated person of a member" is a "person associated with a member." Code §12100(a). A "person associated with a member" is

 (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or

 (2) A sole proprietor, partner, officer, director, or branch manager or a member or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

 For purposes of the Code, a person formerly associated with a member is a person associated with a member.

Code §12100(r).

Counsel for Mr. Abraham admits that he was until six months before the Simpsons' investment a "person associated with a member," namely, associated with JRL Capital Corporation. The Code provides that a person formerly associated with a

7

member is a person associated with a member.  Accordingly, Mr. Abraham is a "person associated with a member."

Moreover, the evidence is that Mr. Overgaard -- indisputably a person associated with a member, JRL Capital Corporation, when the investment was made -- also worked for Mr. Abraham as an employee of MKA Capital Advisors, LLC.  Mr. Abraham's counsel admitted that Mr. Abraham was Mr. Overgaard's "superior."  As such, Mr. Abraham was in a position to exert influence over, and the Court finds that he did exert influence over, Mr. Overgaard.  Even if Mr. Abraham were not a "person associated with a member" because of his former association with JRL Capital Corporation, he exercised influence and control over a person associated with a member.  In substance, it is the same as if Mr. Abraham were a person associated with a member (which the Court finds that he was in any event).

Mr. Abraham relies on *In re Lehman Bros. Securities and ERISA Litigation,* 706 F. Supp. 2d 552 (S.D.N.Y. 2010).  One question presented in that case was whether Richard S. Fuld, Jr., the former chairman and chief executive officer of Lehman Brothers Holdings, Inc. and its subsidiary Lehman Brothers, Inc., was a "person associated with a member."  Lehman Brothers, Inc. was a member of FINRA.  The court found that as chairman and CEO, Fuld was a person associated with a member.  Fuld apparently was chairman and CEO when Lehman Brothers' customer made his investment.  His association with a member, therefore, was contemporaneous with the investment.  However, as indicated, the Code defines someone formerly associated with a member as a member.  Moreover, and unlike Fuld who apparently had little if anything to do with the investment, here Mr. Abraham through his relationship with Mr. Overgaard had

substantial involvement and influence over the investment. I do not find that the holding in *In re Lehman Brothers* is inconsistent with this Court's holding. The Court finds that second requirement of Code §12200 has been satisfied.

<u>Dispute arises in connection with the business activities of a member or associated person.</u>

This dispute arose in connection with JRL Capital Corporation's business activities. Accordingly, it arose in connection with the business activities of a member. It arose in connection with Mr. Overgaard's business activities, i.e., in connection with the business activities of a person associated with a member. And, it arose in connection with Mr. Abraham's business activities. As indicated above, he qualifies as a person associated with a member, and he exercised influence and arguably control over another person associated with a member. Again, *In re Lehman Brothers*, on which Mr. Abraham relies, is not persuasive authority to the contrary. The court there held that Mr. Fuld must arbitrate the claims against him even though he had little to do with the actual investment transaction.

The bottom line is that FINRA arbitration was established to deal with disputes between customers and brokers or persons associated with brokers. The Simpsons established a plausible claim that they were customers of Mr. Abraham as well as of JRL Capital Corporation and Mr. Overgaard, and that Mr. Abraham was a person associated with a member of FINRA. Mr. Abraham, who seeks the injunctive relief, has not established a substantial likelihood that he can show otherwise. The Court finds that the evidence has not established a substantial likelihood that Mr. Abraham can successfully avoid FINRA arbitration of this dispute.

### Irreparable harm.

Generally, being forced to arbitrate a dispute is irreparable harm. *See, e.g., Maryland Cas. Co. v. Realty Advisory Bd. On Labor Relations,* 107 F.3d 979, 984-85 (2d Cir. 1997). However, in this case, Mr. Abraham wants to arbitrate the dispute. His issue was whether the Simpsons can be required to come to Orange County, California and arbitrate with J.A.M.S. rather than arbitrating with FINRA in Denver.

The Court has previously held that Mr. Abraham is not entitled to require the Simpsons to arbitrate with J.A.M.S. in California. Therefore, if he is to have arbitration at all, it will be with FINRA. The alternative is court litigation of the dispute. Mr. Abraham has not established that arbitration, which he favored, creates irreparable injury to him as compared to litigation just because the arbitration would be with FINRA in Colorado. A person with his background and the experience in the industry has presumably had considerable experience with FINRA and its predecessor, the NASD. His own exhibit 2, albeit cryptic, shows his past association with FINRA. He has provided nothing to indicate that he cannot and will not get a full and fair hearing with the FINRA panel. As for arbitrating in Colorado, the investment was sold to the Simpsons in Colorado, and he has not shown any harm, irreparable or otherwise, from having to come to Colorado to arbitrate.

The Court finds that Mr. Abraham has not established that he will suffer irreparable harm.

### Balance of the Equities.

Mr. Simpson is 84 years old. Mrs. Simpson is 89 years old. This case was filed in March 2011. Due to no fault of either party, it has not progressed rapidly. However,

an arbitration is set and ready to go tomorrow. If there is no FINRA arbitration, the alternative, according to Mr. Abraham's counsel, is for the Simpsons to file a new suit seeking a trial of the dispute. The Simpsons' counsel counters that he would instead file a counterclaim in the present case. Either way, it does not appear that resolution of the dispute via a trial would occur soon.

Given the Simpsons' age, the delay inherent in starting over in court, and Mr. Simpson's testimony that they needed the monthly payments, on the one hand, and the fact that Mr. Abraham does not object to arbitration but only to the forum and location, on the other hand, the Court finds that the balance of the equities does not favor a preliminary injunction.

**Public Interest.**

The evidence did not establish that a preliminary injunction would affect the public interest one way or the other.

**ORDER**

The motion for a temporary restraining order or a preliminary injunction is denied.

DATED this 28th day of November, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge